Kenneth ARMSTRONG, on behalf of himself and all others similarly situated, Plaintiffs,

v.

Sister Elizabeth CANDON, Secretary of the Vermont Agency of Human Services, David Wilson, Commissioner of the Vermont Department of Social Welfare, Kent Stoneman, Commissioner of the Vermont Department of Social & Rehabilitation Services and Joseph Kerr, Commissioner of the Vermont Department of Employment Security, Defendants.

Civ. A. No. 77–235.

United States District Court,
D. Vermont.

April 19, 1978.

Alan P. Biederman, Vermont Legal Aid, Inc., Rutland, Vt., for plaintiffs.

David H. Greenberg, Asst. Atty. Gen., Montpelier, Vt., for defendants.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

Plaintiffs Kenneth Armstrong and Terry Beaupre seek declaratory and injunctive relief to enable them to obtain benefits under the State of Vermont's program for Aid to Needy Families with Children, free from any constraints or conditions imposed by the defendants under a plan designated by the defendants as the "Burlington Project." The defendants, Sister Elizabeth Candon, Secretary of the Vermont Agency of Human Services, David Wilson, Commissioner of the Vermont Department of Social Welfare, Kent Stoneman, Commissioner of the Vermont Department of Social and Rehabilitation Services, and Joseph Kerr, Commissioner of the Vermont Department of Employment Security, are officials of the State of Vermont whose duties include the administration of the ANFC program.

Plaintiffs contend that the "Burlington Project" is in conflict with two programs involving joint federal-state participation under the Social Security Act: Aid for Families with Dependent Children and the Work Incentive Program. As a result of the conflict, plaintiffs maintain the "Burlington Project" must fall because of the Supremacy Clause of the Constitution. They further contend that the "Burlington Project" is violative of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

The cause first came on for hearing on the plaintiffs' application for a temporary restraining order to enjoin the "Burlington Project." By an accommodation between the parties, the need for court ordered restraint was eliminated. Evidentiary hearings on the request for preliminary injunctive relief have been consolidated with the trial on the merits, pursuant to Fed.R.Civ.P. 65(a). The evidence presented at the trial has been supplemented by facts stipulated by the parties.

*Class Action*

The complaint has designated the controversy as a class action. The plaintiffs have moved, pursuant to Fed.R.Civ.P. 23, for a determination that they may maintain this action as representatives of a class composed of two groups of individuals:

(1) All Vermont residents who are or will be applicants for benefits under the ANFC–UF program and are thus subject to the requirements and sanctions of the "Burlington Project"; and

(2) All Vermont residents who have applied for benefits under the ANFC–UF program but have been denied such benefits for failure to meet the requirements of the "Burlington Project."

■ The prerequisites to class certification imposed by Federal Rules of Civil Procedure 23(a) and (b)(2) have been met. The defendants argue that certification is unnecessary under the teaching of *Galvan v. Levine,* 490 F.2d 1255 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974) inasmuch as the defendants are all public officials and will abide by the court's decision. Accepting this contention, there is nevertheless good reason for certifying the class. The duration of the "Burlington Project" is limited to the time period between application for ANFC and the eligibility determination on that application. Generally, this period will be thirty days or less. Plaintiffs' claims concerning the project may be mooted by the successful completion of the project, either the first time through, as with plaintiff Beaupre, or on a subsequent attempt, as with plaintiff

Armstrong. Consequently, class certification is necessary to preserve the claims on important questions for others similarly situated. *See Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In view of this posture of the case, the plaintiffs' motion for class certification is granted.

### Jurisdiction

■ Plaintiffs rely on 28 U.S.C. §§ 1343(3) and (4) as the basis for this court's jurisdiction to assert claims on statutory and constitutional grounds. Section 1343(3) of 28 U.S.C. confers jurisdiction on the district courts without regard to the amount in controversy, "To redress the deprivation, under color of any State law . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens . . . ." To invoke this ground for jurisdiction, the court must rely on plaintiffs' claim that defendants' actions under the "Burlington Project" constitute denials of both equal protection and of due process, thus entitling the plaintiffs to bring this action under 42 U.S.C. § 1983 and its counterpart section 1343(3). It cannot be used as a basis for jurisdiction over a claim of violation of the Social Security Act, as that act does not provide for equal rights. *Andrews v. Maher,* 525 F.2d 113, 118 (2d Cir. 1975).

■ Section 1343(4) grants federal jurisdiction over claims "under any Act of Congress providing for the protection of civil rights . . . ." The Social Security Act not being an act providing for the protection of civil rights, does not come within the scope of § 1343(4). *Andrews v. Maher, supra,* at 119.

Consequently, this court's power to consider the plaintiffs' claims concerning violation of the Social Security Act is derived as a matter of pendent jurisdiction provided the court first determines that it has jurisdiction over the constitutional claims. *Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). However, the defendants contend that the plaintiffs' constitutional claims are so patently devoid of merit as to be unsubstantial.

■ It is clear that the complaint alleges a deprivation, under color of state law, of constitutional rights. In so doing, the pleading requirements for invoking 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 have been met. Thus the question of the substantiality of the plaintiffs' claims is presented squarely by defendants' motion to dismiss for lack of subject matter jurisdiction. In evaluating plaintiffs' complaint against the substantiality requirement, this court must be mindful of the proper limitations on the scope of review. A detailed review is not appropriate until the merits are reached. The possibility that the plaintiffs will not prevail is not controlling. Nor is the possibility that the pleadings fail to state a cause of action ground for dismissal for lack of subject matter jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). It is not immediately apparent from the face of the complaint that the plaintiffs' claims of denial of due process and equal protection are so insubstantial as to be devoid of merit; nor is it evident that their claim is foreclosed by prior decisions in this court or elsewhere. *Hagans v. Lavine, supra,* 415 U.S., at 537, 94 S.Ct. 1372.

■ While the plaintiffs' equal protection and due process claims are novel and, in some aspects complex, the defendants' supporting argument undermines the suggestion that the questions are frivolous. In keeping with the teaching of *Hagans, supra,* at 549, 94 S.Ct. 1372, the court will turn to the statutory claims first. The defendants' motion to dismiss for lack of subject matter jurisdiction must be denied.

### Aid To Needy Families With Children

Aid to Needy Families with Children (ANFC) is a federally funded and sponsored public assistance program administered in Vermont by the Department of Social Welfare (DSW), a component of the Agency of Human Services, in cooperation with the United States Department of Health, Edu-

cation and Welfare. Its purpose is to encourage "the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, . . . to needy dependent children and the parents or relatives with whom they are living." Section 401 of the Social Security Act of 1935, 42 U.S.C. § 601. A dependent child is defined as a "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from home, or physical or mental incapacity of a parent" or "the unemployment of the father." Section 406(a) and 407(a) of the Social Security Act, 42 U.S.C. §§ 606(a) and 607(a).[1] On the federal level and in some states, the program is known as Aid for Families with Dependent Children (AFDC); ANFC is the Vermont equivalent.

■ If a state seeks to implement the ANFC program, it prepares plans for doing so and submits them to the Secretary of HEW for approval. 42 U.S.C. § 602 (1970). The state may elect to provide ANFC benefits for all three categories of dependent children: those based on parental absence, incapacity and unemployment; or it may choose not to institute an unemployed fathers program. The federal government provides matching funds to the states for implementing the plans. States must utilize the funds so provided in a manner consistent with the Social Security Act. *Van Lare v. Hurley*, 421 U.S. 338, 340, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). Vermont's statutes implementing the ANFC program are found at 33 V.S.A. § 2701 *et seq.*

1. An additional category, ANFC–EA (Emergency Assistance) 42 U.S.C. § 606(e), is not involved in this controversy. For a discussion of the application of that phase of ANFC in Vermont, *see Lynch v. Philbrook*, No. 75–37 (D.C. Vt.1976) aff'd 550 F.2d 793 (2d Cir. 1977).

2. At the time the law suit was filed the "Burlington Project" period was fixed at 30 days. During that time the eligibility determination

*The Work Incentive Program*

An integral part of the ANFC program is the Work Incentive Program (WIN). WIN's purpose is to obtain employment for ANFC beneficiaries, over the age of 15, who are not specifically exempted from the program. Placement in employment is accomplished by utilizing "all available manpower services . . . under which individuals receiving aid to families with dependent children will be furnished incentives, opportunities, and necessary services in order for (1) the employment of such individuals in the regular economy, (2) the training of such individuals for work in the regular economy, and (3) the participation of such individuals in public service employment, . . . ." 42 U.S.C. § 630 (1971). In Vermont the WIN program is administered by the Department of Employment Security (DES), the WIN sponsor.

*The "Burlington Project"*

The "Burlington Project" was initiated in October of 1976 in the Department of Social Welfare's Burlington District, and thus derived the name. It was designed to correct a growing problem confronting the DSW in that it conceived ANFC–UF was becoming a way of life, rather than simply a temporary means of assisting unemployed fathers with families.

The "Project" is characterized by the State of Vermont as a program whereby ANFC–UF applicants are required to submit to a work search while their applications for ANFC are being processed.[2] Applicants living within twenty miles of a DES office must report to DES daily. They must accept and attend all job referrals and interviews. They must accept all offers of suitable employment.

on the application was held in "pending status" awaiting completion of the "Project." The fixed 30 day period has since been eliminated. The "Burlington Project" now operates in the time period between receipt of the ANFC–UF application and the eligibility determination. *See* Welfare Assistance Regulation 2333.1 (App. 5).

Suitable employment is defined as employment (1) that pays at least the minimum wage, or $2.30 per hour if there is no minimum wage established for the particular job; (2) the applicant is mentally and physically able to perform; (3) is not at a site subject to a strike or lockout; and (4) may be full or part-time, temporary or permanent. Vermont Welfare Assistance Regulation 2333.1. (See Appendix attached.)

Because the "Project" proved to be a success in reducing the ANFC–UF caseload, it was extended to the rest of the state in late October and November of 1976. The "Project" is administered by DES, utilizing the same staff and resources that are involved in the WIN program.

*ANFC–UF Application Procedures*

All ANFC applications, including those in the UF program, are initiated with the Vermont Department of Social Welfare. After completing the forms attendant to the application, the new applicant is instructed by the DSW worker to report to the DES office for registration in the WIN program and concurrent participation in the "Burlington Project."

Requirements of the ANFC–UF program are provided in 42 U.S.C. § 607 and 45 CFR 233.100. WIN requirements are prescribed in 42 U.S.C. §§ 602 and 630 *et seq.,* and 45 CFR § 224 *et seq.*

If an applicant meets the ANFC–UF requirements as set forth in the federal statutes referred to above, and as incorporated in the state plan for ANFC, he and his family are entitled to receive assistance under the ANFC–UF program. One of the requirements for receipt of assistance under any of the ANFC categories is that the applicant register with the WIN program. As shown above, WIN registration occurs immediately upon filing an ANFC application. As soon thereafter as possible, but in no event later than two weeks after the ANFC eligibility determination is made, ANFC–UF applicants must be appraised by the WIN sponsor (DES) and Social and

Rehabilitative Services (SRS). The appraisal interview is conducted for the purpose of developing an "employability plan" designed to lead to employment and ultimately to self-support. 45 CFR 224.22. DES also decides whether an individual should be referred for employment or assigned to one of WIN's work or training components.

After appraisal, and within 30 days of receipt of ANFC–UF benefits, the recipient must be certified as being ready for employment or training and that the support services, such as child care, counseling or medical care, are available if needed. Certification is made by SRS.

Contemporaneous with registration for WIN, an ANFC–UF applicant in Vermont is enrolled in the "Burlington Project." The applicant is informed that failure to comply with the "Burlington Project" requirements during the period between the date of his application and the date of the eligibility determination, may result in denial of the ANFC–UF application. If DSW determines that an applicant is ineligible for ANFC–UF, DES is so notified and the applicant is automatically de-registered from WIN.

If the ANFC–UF applicant cooperates with the "Burlington Project" during the 30 day period, has not obtained suitable employment and is otherwise eligible for ANFC–UF, the applicant will be granted benefits retroactive to the day of application.

*Kenneth Armstrong* is a resident of Rutland, Vermont. He is married and has one minor child. During the summer of 1977 and through September of that year, this plaintiff received benefits under the program for Aid for Needy Families with Children—Incapacity (ANFC–I) administered by the defendants Candon and Wilson. His benefits were terminated under the program on September 15, 1977.[3] On September 17, 1977 he applied for ANFC–UF with the Vermont Department of Social Welfare (DSW). Following the procedure outlined above, Armstrong registered for the WIN program at the DES office and began his

---

**3.** Mr. Armstrong was eligible for the ANFC–I assistance because of a knee condition.

thirty day participation in the "Burlington Project."

Mr. Armstrong reported to the Vermont Job Service, a component of the Department of Employment Security, on September 19. At that time he was referred to the J. P. Carrara Co. for labor on a construction job. After one and one-half days on the job he was discharged due to a lack of sufficient experience. Later he was referred to the Griffin & Ellis Orchards in Castleton for employment during the apple picking season. He contacted Griffin & Ellis Orchards by telephone and was informed that the wages would be compensated at a rate of thirty-five cents for each bushel picked, with no minimum wage guarantee. Because of his belief that a bursitis condition in his knees would not permit him to work from a ladder and would not enable him to pick enough bushels to earn the minimum wage, he did not report for work at the orchard. He notified Vermont Job Service to this effect. On or about September 29, 1977 plaintiff Armstrong was referred to a temporary position for two days work at Metromail in Rutland. He did not report to this referral, nor did he report, either in person or by phone, to the Vermont Job Service on September 29 and 30 because of illness. He consulted his physician's office by telephone concerning his illness and medication was prescribed. Subsequently he reported to the Job Service and explained the reason for his failure to report to Metromail.

DES notified DSW of Armstrong's failure to report to Metromail on September 29 and his failure to report to the WIN–DES worker on September 29 and 30. This information was transmitted on a WIN Status Change Notice (Form MA5–97). On October 4, 1977 the DSW notified the plaintiff Armstrong that his application for ANFC–UF was denied for failure to report to the DES and failure to accept job offers. The same notice informed plaintiff of his right to a hearing before the Human Services Board for the purpose of appealing the decision. DSW then informed DES of the denial of an ANFC–WIN Change Notice (Form DSW 303), specifying the same reasons for the denial that were included in its advice form. In consequence of these procedures, Armstrong was deregistered and removed from the WIN program. He was further informed that he and his family would be denied General Assistance. He subsequently re-entered the ANFC–UF–WIN–"Burlington Project" process and obtained employment for 20 hours each week at $2.35 per hour.

Plaintiff *Terry Beaupre* is a resident of Burlington, Vermont. He applied for ANFC–UF on October 28, 1977 and on that date was referred to DES for WIN registration and participation in the "Burlington Project." He has complied with "Burlington Project" requirements from the date of his ANFC–UF application, at least to the time of the trial.

### The Plaintiffs' Statutory Claims

It is the plaintiffs' contention that the "Burlington Project" imposes work search and acceptance requirements in connection with the ANFC in Vermont in an area that is preempted by the federal WIN program. The plaintiffs maintain that the conflict persists whether the "Burlington Project" is a part of Vermont's participation in WIN or whether it is considered a separate state work program.

More specifically, plaintiffs contend that until such time as an applicant actually becomes a recipient of ANFC benefits, any participation in the WIN work program is voluntary. Consequently, an ANFC–UF applicant's decision not to participate in WIN cannot be used to prejudice either his ANFC–UF application or his subsequent WIN participation. It is argued that the "Burlington Project" is a work program which is made mandatory for ANFC–UF applicants and failure to participate in the "Burlington Project" may result in denial of both ANFC–UF benefits and WIN benefits. Thus, it is urged that the program is in direct conflict with the WIN program and with ANFC eligibility requirements. Further conflict is found, according to the plaintiffs, because the procedural safe-

guards of the WIN program and the limitations on the sanctions for failure to comply with WIN are not present in the "Burlington Project." For these reasons, the plaintiffs Armstrong and Beaupre maintain that the "Burlington Project" is contrary to controlling federal statutes and must fail under the Supremacy Clause.

The same claims of statutory conflict give rise to plaintiffs' remaining constitutional complaints. The absence of procedural safeguards in the "Burlington Project" is said to be a violation of the Due Process Clause of the Fourteenth Amendment. The difference in treatment of WIN registrants who are ANFC recipients, compared to the treatment of WIN registrants who are ANFC applicants, is said to be violative of the Equal Protection Clause.

*Discussion*

By force of the prevailing federal statutes, as a condition of eligibility, all persons in the ANFC–UF program are required to participate in the WIN program. 42 U.S.C. § 602(a)(19)(A) and (F); 42 U.S.C § 607(b)(2)(C)(i). The design of the statute is to afford priority to unemployed fathers among other participants in the job and placement programs available. 42 U.S.C § 633(a). The ultimate purpose of WIN is to assist its participants in securing employment in the economy, if available or, if unavailable, to direct them to public service employment. The program seeks to provide the opportunities, the services and incentives to gain these objectives by way of institutional and on-the-job training, work experience, labor market information, job-seeking skills and referrals to work opportunities. Participants who fail to accept assignment to employment or training are subject to sanctions and deregistration.

The "Burlington Project" goes farther. It requires the participant to report daily if within twenty miles of the Employment Security office and less frequently if beyond that radius. The Vermont Welfare Assistance Regulations include in the definition of an "unemployed father" the de-

mands of the "Burlington Project" to the effect that "(h)e has not refused without good cause, within the 30 day period prior to receipt of assistance, a bona fide offer of employment or training for employment, and is currently registered with the State Employment Service." Welfare Regulation 2333.1(3). The Vermont WIN program was redesigned to transfer the registration function from the Social Welfare Department to the Department of Employment Security. The focus of the program was changed to place greater emphasis on ANFC–UF applicants. It requires DES to assist applicants to secure employment. Beyond that, the effect has been to impose on WIN registrants the additional demands of the "Burlington Project" as prerequisites to eligibility for ANFC–UF benefits.[4]

The defendants maintain there is no conflict between the WIN program and the "Burlington Project" in Vermont. However, in the plaintiff Armstrong's case, his failure to meet the demands of the "Project's" administrators resulted in his automatic and summary deregistration from WIN, thereby precluding his participation in WIN before the procedural steps of appraisal and certification were reached.

Because of the dual nature of the "Project," it must be measured against both WIN and ANFC as set forth in the Social Security Act of 1934. The pertinent ANFC–UF eligibility standards are set forth in 42 U.S.C. § 607 and at 45 CFR 233.100. Section 607 provides:

(a) The term "dependent child" shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title, who has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of his father, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home.

4. Pltfs. Ex. 17. Memo from Director of "Burlington Project" 1/12/77.

(b) The provisions of subsection (a) of this section shall.be applicable to a State if the State's plan approved under section 602 of this title—

(1) requires the payment of aid to families with dependent children with respect to a dependent child as defined in subsection (a) of this section when—
(A) Such child's father has not been employed (as determined in accordance with standards prescribed by the Secretary) for at least 30 days prior to the receipt of such aid,
(B) such father has not without good cause, within such period (of not less than 30 days) as may be prescribed by the Secretary, refused a bona fide offer of employment or training for employment.

In addition, the federal statute requires the state plan to provide for denial of ANFC–UF benefits if the child's father is not registered in the work incentive program. 607(b)(2)(C)(i) as amended 1976. Therefore, assuming an individual meets the eligibility requirements of § 607(a) and (b)(1), the state plan must nevertheless require denial of assistance if he fails to register for WIN. The Vermont applicant complies with the requirement of the Social Security Act since he must register for the WIN program when he applies for ANFC–UF benefits. However, the registrant is automatically removed, or deregistered from the WIN program if he fails to perform all. the conditions imposed by the "Project" regulations.

In essence, an applicant who meets the standards of eligibility prescribed in § 607(b), by having been unemployed for at least thirty days prior to the receipt of benefits, has not without good cause refused a bona fide offer of employment, and has registered for the WIN program as required by § 607(b)(2)(C) may be excluded from ANFC–UF and WIN for failure to comply with each and all of the requirements of the "Burlington Project," including failure to report daily to a DES office.

■ The Supreme Court held in *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) that "a state eligibility standard that excludes persons eligible for assistance, under Federal AFDC standards violates the Social Security Act and is, therefore, invalid under the Supremacy Clause." *Townsend* at 286, 92 S.Ct. at 505. Under this standard, if the "Burlington Project" imposes additional eligibility standards on ANFC–UF applicants, it is invalid under the Supremacy Clause. That this does not mean total federal preemption was made clear in *New York State Department of Social Services v. Dublino et al.,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). The Court held that Congress, by establishing the WIN program, has not preempted the work program field. It appears to be settled that the states have some latitude in defining the term "unemployment" for the ANFC–UF program. *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). The states may deal with the problem by varying methods, but the precept remains that the method selected must not conflict with the Social Security Act. *See King v. Smith,* 392 U.S. 309, 326, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (Warren, C. J.).

Plaintiff Kenneth Armstrong's ANFC–UF application was denied for his failure to report to the Department of Employment Security and for his failure to accept temporary job offers referred by DES. Both of these failures were in noncompliance with the "Burlington Project" and, under the Vermont regulations, automatically resulted in denial of eligibility, subject to appeal by a hearing before the Human Services Agency. Vermont Welfare Assistance Regulations 2333.1. Since the "Burlington Project," like WIN, is a job search program and compliance with the "Burlington Project" has become a condition of ANFC–UF eligibility, the question presented is akin to that presented in *Dublino.*

*Dublino* held that the New York Work Rules, in the main, were complementary to the WIN program and, therefore, "the case for federal pre-emption becomes a less persuasive one." *Dublino,* 413 U.S. at 421, 93 S.Ct. at 2517. The Court's determination that the New York State work program

was complementary, hinged in large part on the finding that in New York "WIN is a partial program which stops short of providing adequate job and training opportunities for large numbers of state AFDC recipients." *Id.* at 419, 93 S.Ct. at 2516. In New York State WIN operated in only 14 of 64 social service districts. In the 14 districts, where WIN did operate, the number of registrants far exceeded the number of available WIN slots. The New York Work Rules were applied to all ANFC recipients in areas where WIN did not exist; in the 14 districts where WIN did operate, the Work Rules only applied to those for whom there were no WIN opportunities available. The Work Rules, like WIN, were requirements which had to be observed to ensure continued eligibility of AFDC recipients. The Court found that New York had "attempted to operate the Work Rules in such a manner as to avoid friction and overlap with WIN." *Id.* at 421, 93 S.Ct. at 2517.

In contrast, the WIN program in Vermont operates throughout the state. Unlike *Dublino,* no evidence has been developed to indicate that there are too many WIN registrants for the program to handle. Consequently, there has been no showing of the need for an additional program in Vermont that was present in New York. The avowed purpose of the program is to move more people into jobs, rather than into training. The state has cited what it considers to be positive results of the "Burlington Project" in the form of greatly reduced ANFC–UF caseloads.[5] While claiming savings of approximately $1.4 million, the state presented no evidence that the result was positive in terms of the objectives of WIN and ANFC. Statistics provided by the state indicate that from March 1977 until August 1977, 767 ANFC–UF applicants were denied benefits. Of this number, 395, or more than half, resulted from failure to comply

with the "Burlington Project," rather than from procurement of successful job placements. The reason for the remaining denials is not revealed. The success of the "Burlington Project" in placing people in employment, thereby eliminating the need for assistance, is open to question. It must be recognized that the economic interests of the state in allocating its limited ANFC funds are valid. However, as the Supreme Court has observed:

> Its interest in economically allocating its limited AFDC resources may be protected by its undisputed power to set the level of benefits and the standard of need, and by its taking into account in determining whether a child is needy all actual and regular contributions to his support.

*King v. Smith, supra,* 392 U.S. at 334, 88 S.Ct. at 2142.[6] The "Burlington Project's" "accomplishments" appear to have been achieved at the expense of the purpose of the ANFC program of aiding the dependent child who is needy due to his father's unemployment. In this regard, it is also important to contrast the sanctions imposed by the "Burlington Project" with those imposed under WIN. Under the WIN program a recipient of ANFC who is deregistered from the WIN program, after notice and opportunity for a hearing, will not have his needs taken into account in determining the family's need for assistance. The remainder of the family's assistance will continue as before the deregistration. 45 CFR 224.51. Under the "Burlington Project" an individual who fails to comply is determined to be ineligible for ANFC–UF, with the result that no one in the family receives assistance. There is opportunity to seek review of the denial of ANFC–UF assistance. However, if the applicant is found to have failed without good cause to comply, the sanction applies to the entire family.[7]

---

5. The evidence shows that the ANFC–UF caseload decreased between January and September 1977 from 1,400 to 411.

6. During fiscal year 1977 the Department of Social Welfare had a budget surplus of $1,000,-000. The ANFC program accounted for 3–400,-000 of that surplus.

7. Testimony of defense witness established that this feature of the "Burlington Project" accounts in part for its effectiveness in a budgetary sense; and accounts also for the state's determination that WIN was inadequate. Another "inadequacy" of WIN cured by the "Burlington Project" was claimed to be that WIN required that any employment provide a wage

This aspect of the "Project" visits the delinquency of the father upon his children. *See Rush v. Smith,* 573 F.2d 110 (2d Cir. 1978) (Friendly, J.).

The "Project" is operative only as to applicants for ANFC–UF, on a state-wide basis, from the date of their application until the date of the eligibility determination. Thus for the most part, WIN and the "Burlington Project" do not operate concurrently. However, the federal regulations do provide that the appraisal interview (conducted by DES and SRS for the purpose of developing an employability plan) is to be conducted at the time of registration for WIN or as soon thereafter as possible. 45 CFR 224.22(a). The appraisal interview is the point at which the WIN program activity begins. A special section of the regulations applies to unemployed fathers, giving them the highest priority and requiring that they be appraised within two weeks of the determination of ANFC eligibility. *Id.* at 224.22(b). While generally the eligibility determination precedes appraisal, it need not do so. If appraisal occurs first, the WIN program is actively underway and the "Burlington Project" requirements persist until the eligibility determination. Thus the two programs may overlap.

Because the "Burlington Project" imposes additional ANFC–UF eligibility requirements on applicants, it has the effect of withholding ANFC–UF assistance and WIN benefits from individuals, such as plaintiff Armstrong, who meet the requirements of the Social Security Act but who fail to comply with the "Burlington Project." The "Project's" operation thus results in denial of ANFC and WIN benefits to the very group which Congress has said must receive . . . the highest priority under WIN, 42 U.S.C. § 633(a). This is considerably different from the New York Work Rules which provide services similar to WIN's for those individuals who

otherwise are unable to receive them due to the financial and manpower inadequacies of the WIN program in New York.

The defendants have suggested that the "Burlington Project" does not actually impose additional eligibility requirements. Rather, they say it is a monitoring program to assure compliance with the requirement that the father has not, without good cause, within a period of at least 30 days prior to the receipt of ANFC–UF benefits, refused a bona fide offer of employment or training for employment. 42 U.S.C. § 607(b)(1)(B), 45 CFR 233.100(a)(3)(ii).

Defendants cite *Batterton v. Francis, supra,* as support for their authority to implement the subsection through the "Burlington Project." In *Batterton* the Supreme Court found that Section 407(a) of the Social Security Act did not preclude the Secretary of HEW from promulgating a regulation which gave the States discretion to define the term "unemployment" so as not to include "a father whose unemployment results from participation in a labor dispute or who is unemployed by reason of conduct or circumstances which result or would result in disqualification for unemployment compensation under the State's unemployment compensation law." 45 CFR 233.-100(a)(1)(ii). The Court found that § 407(a) permits the states to define unemployment according to standards prescribed by the Secretary and that the particular standard established by this regulation is not inconsistent "with the goal of AFDC–UF, namely, to aid the families of the involuntarily unemployed." *Batterton, supra,* 432 U.S. at 429, 97 S.Ct. at 2407. Thus the Court found that the power to define unemployment under § 407(a) remains with the states as it did before the 1968 amendments to the Social Security Act, but that those amendments gave the Secretary authority to establish standards for the definition.

---

equal to or greater than the family's ANFC cash benefit from the state. Under the "Burlington Project" the employment need only provide the minimum wage irrespective of the family's total ANFC cash benefits. It should be noted in this regard that the federal regulations

establishing ANFC–UF qualifications do not require the applicant to accept a job which pays the minimum wage unless that wage is "customary for such work in the community." 45 CFR 233.100(a)(3)(ii)(a).

The defendants do not purport to be exercising the "power" to define unemployment which the Court discussed in *Batterton*. They have not contended that the "Burlington Project" involves § 407(a) of the Social Security Act. Rather, they contend that the "Project" is designed to monitor the requirement set forth in Section 407(b)(1)(B). No power is given to the states by that section, nor is discretion given to the Secretary—except to prescribe the relevant period of time provided it be not less than 30 days.

However, the regulations at 233.100(a)(3)(ii) provide that the state agency must determine whether a bona fide offer has actually been made; if refused, whether there was good cause for the refusal. While this regulation does not give the state authority to establish additional standards, as the regulation and statute did in *Batterton*, it does require the states to determine whether the federal eligibility standards have been met. The defendants press the point that this is accomplished through the "Burlington Project."

There is merit to the defendants' argument that the requirement of section 407(b)(1)(B), 45 CFR 233.100(a)(3)(ii) is meaningless if the applicant does not place himself in a position to receive job offers. In addition, the state's use of the DES and WIN staff to expose the individual to job opportunities appears to be a reasonable means of obtaining that end. However, it is entirely clear that the "Burlington Project" does more than monitor the 30 day period established by the federal statute and regulations referred to above. It imposes conditions of eligibility that exceed the requirements of the Social Security Act.

The "Burlington Project" is set forth in the Vermont Welfare Assistance Regulations at 2333.1. Page 2 of those regulations begins as follows:

This criteria [the criteria for determining who is an unemployed father] is considered met if the UF applicant has not refused suitable employment within the 30 day period prior to receipt of assistance and from date of application until date of eligibility determination [he complies with the requirements of the "Burlington Project"].

It is clear that this aspect of the state regulation established two requirements: first, the 30 day requirement of § 407(b)(1)(B) and second, the demands of the "Burlington Project." The first requirement is consistent with the federal requirements.[8] The second requirement is above and beyond the conditions imposed by federal law. Under *Townsend v. Swank, supra,* the second requirement is impermissible. Unlike the statute and regulation involved in *Batterton,* the federal law involved in the instant case does not provide the defendants the authority to prescribe additional standards.

If the "Burlington Project" were only designed to monitor the 30 day requirement of § 407(b)(1)(B), the answer might be different. However, the use of the conjunctive "and" in the language just quoted from the Vermont Regulations leads to the conclusion that the "Burlington Project" is more than a monitoring program.

A further point should be noted. The requirement of § 407(b)(1)(B) expressly states that the relevant period shall be no less than 30 days. Under the provisions of 2333.1 the "Burlington Project" is operational only in the period between the application and the eligibility determination. This period may be less than 30 days.[9] In consequence, it fails to cover the full period; to this extent the project fails to perform the monitoring function assigned to it.

Another shortage appears in the "Burlington Project." The DES notifies the

---

**8.** But, as mentioned at footnote 7, *supra,* the state's definition of suitable employment is at variance with the federal standard in at least one respect.

**9.** As originally in effect, and at the time this law suit was commenced, the duration of the

"Project" was 30 days. However, because that usually resulted in a delay of the eligibility determination, the 30 day aspect was dropped. Thus it would appear that the period involved between application and eligibility determination will normally be less than 30 days.

DSW of the non-compliance of an individual which results in automatic denial of eligibility. A hearing is available to contest this denial as required by 45 CFR 220.11. However, federal regulations impose an additional requirement in 233.100(a)(3)(ii), namely that the father must be given an opportunity to explain his failure to accept a bona fide offer of employment. This opportunity is in addition to the formal hearing procedure. There is no provision for this step in the "Burlington Project." It is apparent from the testimony at the hearing that neither the DES worker nor the DSW worker involved with Armstrong's case, afforded him the opportunity to explain his refusal as contemplated by the federal regulations.

Finally, it is significant in determining the propriety of the "Burlington Project" as it relates to WIN and to ANFC, that the "Burlington Project" is not a part of either the state ANFC plan required by 42 U.S.C. § 602 or the state WIN plan required by 42 U.S.C. § 633(b)(1). Unlike the program conducted under the New York Work Rules and the Maryland regulation considered in *Dublino* and *Batterton* respectively, the "Burlington Project" has not received the approval of the Secretary of Health, Education and Welfare, nor the Secretary of Labor. Both the overall state ANFC plan and the state WIN plan are mandatory; when approved by DOL and HEW, the plans are binding on the state, 45 CFR §§ 220.71 and 224.12. The regulations provide that the basic state plan "shall be a narrative description . . . of the total state program of child welfare services." *Id.* § 220.-71(b). The "Burlington Project" affects both WIN and ANFC in Vermont, yet it is not included in the Vermont State Plan for either program.

In summary, the "Burlington Project" is at incompatible variance with both the WIN program and the ANFC–UF program in several respects. The "Project" conflicts with ANFC–UF in the very provision it is claimed to enforce, 42 U.S.C. § 607(b)(1)(B), and 45 CFR 233.100(a)(3)(ii) (concerning refusal of a bona fide offer of employment). The "Burlington Project" operates for an indeterminate period of time; the federal law requires the period to be at least 30 days. The "Burlington Project" requires an applicant to accept a job that pays the minimum wage; the federal law requires, in addition, that the wages be customary for the same type of work in the community. The "Burlington Project" permits a determination of ineligibility to be based on the mere fact of refusal of a job offer; the federal law requires that the applicant be given an opportunity to explain the refusal.

Beyond these considerations, the language of the "Burlington Project" regulation indicates that the "Project" is in addition to the requirement of section 607(b)(1)(B). As a result, the "Project" imposes requirements on ANFC–UF applicants that exceed those imposed by federal law.

The sanction for failure to comply with the "Burlington Project" is denial of assistance for the entire family; under WIN, failure to comply may result in deregistration and a sanction limited to the cash benefits attributable to the recalcitrant parent. The "Burlington Project" rules permit summary discharge from the "Project" for failure to comply, while the WIN program provides a hearing on the issue of compliance before deregistration.

Finally, the "Burlington Project" could operate to withhold the services of the WIN program from ANFC–UF applicants who might otherwise qualify but for the determination of ineligibility for non-compliance with the demands of the "Project." In this respect, the operation of the "Burlington Project" trenches on those aspects of the WIN program designed to afford training of the registrant for work in the regular economy and the alternative of public service employment.

A remaining problem is presented by the defendants' failure to amend the state plan to include the "Burlington Project." Had this been attempted, it seems that some of the conflicts could have been resolved by the state and federal agencies involved prior to approval of an amended state plan.

The court recognizes the State of Vermont's duty to determine whether or not an applicant meets the requirements of the ANFC–UF program. Among these is the requirement that the applicant not reject a bona fide offer of employment within the period of no less than 30 days prior to the receipt of aid. In designing a system to monitor compliance with this requirement, the State must adhere to the provisions of federal law set forth at 42 U.S.C. § 607 and 45 CFR 233.100. The "Burlington Project" is designed to achieve the active participation of the applicant as distinguished from simply monitoring his work effort. However worthy the purpose, the means adopted must not adversely affect other aspects of the Social Security Act. To the extent that the "Burlington Project" regulations interdict the operation of WIN and ANFC–UF programs in Vermont, the state regulations in their present context are impermissible under the Supremacy Clause of the Constitution.

This determination of the statutory claim precludes the resolution of the Due Process and Equal Protection issues asserted in the complaint. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936); *King v. Smith, supra*, 392 U.S. at 333, 88 S.Ct. 2128.

The parties are directed to prepare a proposed decree for approval by the court in accordance with the views expressed in the memorandum of decision, the proposed judgment order to be submitted within 45 days from the filing of the court's decision.

APPENDIX to follow.

| | | |
|---|---|---|
| | | 2333-2333.1 p.1 |
| Welfare | R E G U L A T I O N S | |
| Assistance | | ANFC Eligibility |
| 2330–2339 | Common Factors | Proposed 8/1/77 |

9

2333. Unemployment (ANFC-UF)

A child is "deprived of parental support" if:

1. His father (natural or adoptive) or stepfather meets the definition of "unemployed father" and expresses willingness to cooperate with Department of Employment Security in WIN enrollment or acceptance of a suitable job, and

2. He is living with both parents, and

3. He is not deprived of parental support for any other reason (death, continued absence, or incapacity), and

4. Income and resources available for his support are insufficient to meet his total needs according to department standards.

Unemployment of a child's mother does not by itself constitute deprivation of parental support; the child of an unemployed mother may, however, be eligible on the basis of one of the other factors (death, continued absence or incapacity).

2333.1 Unemployed Father

An "unemployed father" is one whose minor children are in need because he is out of work, is working part-time, or is not at work due to an industrial dispute (strike), provided that he meets all of the following criteria:

1. He has six or more quarters of work in any 13 calendar quarter period ending within one year prior to application for assistance, or received or was qualified to receive Unemployment Compensation within one year prior to application for assistance.

2. If employed, he was employed less than 100 hours in the previous 30 days; or exceeds that standard for the 30 days prior to the date or application if his work is intermittent and the excess is of a temporary nature as evidenced by the fact that he was under the 100 hour standard for the two 30 day periods prior to the 30 days containing an excess and is expected to be under the standard during the next 30 days. (For example: An apple picker is eligible who worked 250 hours in the last 30 days, but worked only 80 hours and 90 hours in the two previous 30 day periods and is expected to work less than 100 hours in the next 30 days.)

3. He has not refused, without good cause, within the 30 day period prior to receipt of assistance, a bona fide offer of employment or training for employment, and is currently registered with the State Employment Service. Note: A full time student is considered to be unavailable for employment and therefore, does not meet the definition of "unemployed father". A full time student is one whose school schedule is equal to a full time curriculum as defined by the school.

– continued on next page –

| Welfare | R E G U L A T I O N S | |
|---|---|---|
| Assistance | | ANFC Eligibility |
| 2330-2339 | Common Factors | Proposed 8/1/77 |

9

2333. Unemployment (ANFC-UF) -- continued

2333.1 Unemployed Father -- continued

This criteria is considered met if the UF applicant:

a. Reports daily, in person, to a DES office for job services, unless otherwise instructed by DES.

An applicant who lives 20 miles or more from the nearest DES office will be required to report twice weekly,
and
On the days he does not report, to conduct his own job search and call into the DES office to report his activities and to receive job referrals. A visit to a DES Mobile Unit, as arranged by the counsellor, may be substituted for one of the visits to the regular DES office.

b. Accepts and goes to all job referrals, interviews, etc.

c. Accepts offers of suitable employment.
Employment shall be considered suitable if:
1) The wages are equal to the applicable minimum wage, or $2.30 per hour (monetary and/or in-kind) if no minimum wage exists for the particular employment.
2) The individual is physically and mentally fit to perform the employment offered.
3) The work offered is not at a site subject to a strike or a lockout at the time of the offer.
4) Employment may be full or part-time, (i.e., jobs of short duration; 1 day, 1 week, etc., jobs entailing only a few hours of work per day; jobs of less than 35 hours per week).

d. Actively seeks employment opportunities on his own and reports this activity to DES.

If the UF applicant refuses to cooperate with DES, the application for assistance shall be denied. Examples of refusing to cooperate as reported by DES are:

a. Refusing to report for a scheduled appointment with DES staff without prior notification and justification.

b. Failure to accept referrals, report for job interviews or accept offers of suitable employment.

c. Postponement, without good cause as determined by DSW, of two consecutive scheduled appointments with DES staff.

-- continued on next page --

**1164**

Welfare R E G U L A T I O N S
Assistance ANFC Eligibility
2330-2339 Common Factors Proposed 8/1/77
 9

2333. Unemployment (ANFC-UF) – continued

2333.1 Unemployed Father – continued

UF applicants who meet the General Assistance criteria may be granted
a $10.00 weekly transportation allowance to facilitate reporting to
the DES office and to conduct other job search activities. This
weekly allowance shall be made only after the applicant has made the
initial contact with DES and has been registered for employment.

Applicants with problems identified as barriers to employment shall
be referred to SRS (SAU). The need and referral for supportive
services does not necessarily preclude a continuing effort for job
service activity. The two activities can be carried on simultaneously.

UF applicants who subsequently claim to be incapacitated shall have
their eligibility based on incapacity rather than unemployment. The
UF application shall be denied at the time the applicant claims he is
incapacitated; the original application shall be updated and handled
as a new application.

Full-time employment, although earnings may be insufficient to meet family
need, is not considered "unemployment". Income from fewer than four
boarders is not considered "employment".

When an applicant father states that his physical or mental health prevents
him from obtaining gainful employment, eligibility shall be established on
the basis of a medical determination of incapacity rather than unemployment.

Vermont Department of Social Welfare Bulletin No. 77-40
Agency of Human Services 70

| | | |
|---|---|---|
| Welfare | | |
| Assistance | | ANFC Eligibility |
| 233C-2339 | Common Factors | Proposed 4/7/77 |

2333. Unemployment (ANFC-UF) cont.

2333.2 Employment Definitions

1. Full-Time Employment

An individual is considered employed "full-time" if he has worked 100 hours or more in the previous 30 days. WIN registrants placed in OJT under the WIN Program are considered to be employed.

Self-employment requiring at least 100 hours activity in the previous 30 days is considered full-time.

Occasional lost time (scattered days during the month) due to environmental (e.g., weather) conditions does not alter the status of full-time employment, if the individual would otherwise normally have been at work.

2. Part-Time Employment

An ANFC-UF applicant/recipient who is employed on a "part-time" basis still meets the definition of being "unemployed". "Part-time" employment is defined as less than 100 hours in the previous 30 days, or self-employment regularly requiring less than 100 hours activity in a 30 day period.

(For example: A father who worked 40 hours a week for two weeks in the last 30 days would still meet the 100 hour criteria.

3. Quarter of Work

A "quarter of work" is defined as any calendar quarter during which an individual receives earned income of $50.00 or more, or during which he participated in a work training or work incentive program.

4. Calendar Quarter

A "calendar quarter" is any one of the four following periods of three consecutive calendar months:

> January 1 – March 31
> April 1 – June 30
> July 1 – September 30
> October 1 – December 31

EXHIBIT A

STATE OF VERMONT
AGENCY OF HUMAN SERVICES

DSW 122
R 8/77

# SOCIAL WELFARE

*BULLETIN* No. *77-95*

FROM David M. Wilson, Commissioner
 For the Secretary

Date *12/30/77*

SUBJECT *ANFC-UF*

### Instructions

_X_ Maintain Manual - See instructions below.

___ This bulletin supersedes no. _____

_X_ Retain bulletin for information until _____

___ Retention of this bulletin is not required.

___ Proposed Regulation - Retain bulletin and attachments
 until superseded.

___ Information or Instructions - Retain until _____

Manual Reference(s)

*Welfare Assistance Manual*

 *2333.1*

This revision eliminates the requirement to hold ANFC-UF applications pending for a period of 30 days from date of application. They will be processed within the normal flow of ANFC applications. All other procedures will continue to apply between date of application and the date of eligibility determination.

*MANUAL HOLDERS maintain manuals assigned to you as follows:*

Welfare Assistance Manual

Remove

 *2333.1 p2 (77-70)*

Insert

 *2333.1 p2 (77-95)*

*ND/pvs*

**2333.** *Unemployment (ANFC-UF) (Continued)*

 **2333.1** *Unemployed Father (Continued)*

*This criteria is considered met if the UF applicant has not refused suitable employment within the 30 day period prior to receipt of assistance and from date of application until date of eligibility determination he:*

 a. *Reports daily, in person, to a DES Office for job service, unless otherwise instructed by DES.*

 *An applicant who lives 20 miles or more from the nearest DES office will be required to report twice weekly,*
 *and*
 *On the days he does not report, to conduct his own job search and call into the DES Office to report his activities and to receive job referrals. A visit to a DES Mobile Unit, as arranged by the counsellor, may be substituted for one of the visits to the regular DES Office.*

 b. *Accepts and goes to all job referrals, interviews, etc.*

 c. *Accepts offers of suitable employment.*

 *Employment shall be considered suitable if:*

 1. *The wages are equal to the applicable minimum wage, or $2.30 per hour (monetary and/or in-kind) if no minimum wage exists for the particular employment.*
 2. *The individual is physically and mentally fit to perform the employment offered.*
 3. *The work offered is not at a site subject to a strike or a lockout at the time of the offer.*
 4. *Employment may be full or part-time, (i.e., jobs of short duration; 1 day, 1 week, etc., jobs entailing only a few hours of work per day; jobs of less than 35 hours per week).*

 d. *Actively seeks employment opportunities on his own and reports this activity to DES.*

*If the UF applicant refused to cooperate with DES, the application for assistance shall be denied. Examples of refusing to cooperate as reported by DES are:*

 a. *Refusing to report for a scheduled appointment with DES staff without prior notification and justification.*

 b. *Failure to accept referrals, report for job interviews or accept offers of suitable employment.*

 c. *Postponement, without good cause as determined by DSW, of two consecutive scheduled appointments with DES staff.*

*- Continued On Next Page -*

